## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

**NANCY J. VEGLIA,**

      **Plaintiff,**

**v.**                                    **Case No. 2:13-cv-00227-FtM-29DNF**

**COMMISSIONER OF SOCIAL SECURITY,[1]**

      **Defendant,**

_____/

### REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

      This cause is before the Court on Plaintiff Nancy J. Veglia's Complaint (Doc. 1) filed on March 21, 2013.  Plaintiff seeks judicial review of the final decision of the Acting Commissioner of the Social Security Administration ("SSA") denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI").  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.  For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

      **I.  Social Security Act Eligibility, the ALJ Decision and Standard of Review**

      **A. Eligibility**

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Commissioner Michael J. Astrue as the Defendant in this suit. FED. R. CIV. P. 25(d). No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

The law defines "disability" as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382a(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382a(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.  Plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987).

### B.  Procedural History

On September 22, 2009, Plaintiff filed applications for DIB and SSI asserting a disability onset date of August 27, 2009. (Tr. 101-02).  These claims were denied initially on August 26, 2009, and denied upon reconsideration on January 21, 2011. (Tr. 23).  A hearing was held before Administrative Law Judge, Ronald S. Robins (hereinafter "ALJ") on July 19, 2011. (Tr. 23). The ALJ issued an unfavorable decision on October 26, 2011. (Tr. 23-30).  On December 5, 2012, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Tr. 1-3).  The ALJ's decision is the final decision of the Commissioner of Social Security in the present case. Plaintiff now seeks judicial review of the ALJ's decision in the United States District Court for the Middle District of Florida.

### C.  Summary of the ALJ's Decision

The ALJ found that Plaintiff "has not been under a disability within the meaning of the Social Security Act since August 27, 2009, through the date of this decision." (Tr. 24).  At step one of the five-step sequential evaluation process, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since August 27, 2009, the alleged onset date. (Tr. 25).  At step two, the ALJ found that the plaintiff suffered from the following severe impairments: "history of rheumatoid arthritis, history of hypothyroidism, history of migraine headaches, history of fibromyalgia, lesion on the right lung, and status for cervical spondylosis." (Tr. 25).  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. 27).

At step four, the ALJ found that Plaintiff has the Residual Functional Capacity ("RFC") to perform a limited range of light work. (Tr. 27). The ALJ found that Plaintiff "is limited to occasional climbing of stairs/ramps, occasional climbing of ladders, ropes, and scaffolds, and occasional balancing, stooping, kneeling, crouching, and crawling." (Tr. 27). The ALJ also found that Plaintiff "must avoid concentrated exposure to extreme cold or extreme heat [and] must avoid work at unprotected heights and around hazardous machinery." (Tr. 27).

In light of Plaintiff's symptoms, the ALJ then introduced a two-step inquiry which the ALJ is required to follow: first, the ALJ must determine "whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce [Plaintiff's] pain or other symptoms"; second, the ALJ "must evaluate the intensity, persistence, and limiting effects of the [Plaintiff's] symptoms to determine the extent to which they limit the [Plaintiff's] functioning." (Tr. 27). In the event that "statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, [the ALJ] must make a finding on the credibility of the statements based on a consideration of the entire case record." (Tr. 27). In the present case, the ALJ found that the

Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms. (Tr. 28). However, the ALJ did not find the Plaintiff's claims concerning the intensity, persistence, and limiting effects of these symptoms were credible to the extent that they were inconsistent with Plaintiff's residual functional capacity assessment. (Tr. 28).

At step five, the ALJ found that Plaintiff was "capable of performing her past relevant work as a receptionist and customer service representative," noting that such work "does not require the performance of work-related activities precluded by the claimant's residual functional capacity." (Tr. 30). Therefore, the ALJ found that "[Plaintiff] has not been under a disability, as defined in the Social Security Act, from August 27, 2009, through the date of this decision." (Tr. 30).

### D. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th

Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II. Review of Facts

### A.  Background Facts

Plaintiff was born on March 22, 1953. (Tr. 48, 101, 105).  Plaintiff has no minor children or children who became disabled prior to reaching the age of 22. (Tr. 102). Plaintiff was married to Vincent Veglia on October 19, 2007, and was previously married to Paul Moore in 1984 until they divorced in 1999. (Tr. 102). Plaintiff has the equivalent of a high school education and past relevant work experience as a receptionist and a customer service representative, which is classified as semi-skilled, sedentary work. (Tr. 30, 48, 61-62).

### B.  Medical Evidence

The medical records in evidence from Dr. Ranjit Fernando consist of office notes from a January 16, 2008 joint examination and a May 9, 2008 joint examination. (Tr. 197-98). Taken together, Dr. Fernando's assessment of Plaintiff was inflammatory arthritis, Sjogren's Syndrome, carpo-metacarpal arthritis left thumb, and fibromyalgia. (Tr. 197-98). As a result of the May 9, 2008 joint examination, Plaintiff was prescribed a CMC thumb brace and advised to see an orthopedist for her right knee. (Tr. 197). In addition, Dr. Fernando noted that Plaintiff was given a disabled parking permit on June 23, 2008. (Tr. 197).

The medical records in evidence from Dr. Guillermo Bohm consist of office notes from July 11, 2007 through May 13, 2009, (Tr. 203-42), as well as imaging reports from Radiology Regional dated April 29, 2009, May 11, 2009, and October 28, 2009. (Tr. 199-202, 241-42).

Through April 22, 2009, Dr. Bohm's assessment of Plaintiff was hypothyroidism. (Tr. 209-22). On May 6, 2009, Dr. Bohm's assessment changed to hypothyroidism, hepatic cyst, chronic pain, and depression/anxiety. (Tr. 206-07). On May 13, 2009, Dr. Bohm's assessment changed once again to hypothyroidism and lung mass. (Tr. 204-05). The April 29, 2009 MRI of the chest revealed multiple hepatic cysts with further assessment recommended to assess the cause of hemoptysis. (Tr. 201-02). The May 11, 2009 CT of the chest revealed a nodular lesion with discrete irregular borders in the right lung. (Tr. 199-200). Finally, the October 28, 2009 FDG PET/CT scan revealed a mildly hypermetabolic right lower lobe pulmonary nodule, which had decreased in size from the May 11, 2009 CT scan. (Tr. 241-42). This favored a benign finding such as an infection or inflammation, though this did not "entirely exclude malignancy." (Tr. 242). A follow-up CT scan was recommended in four months. (Tr. 242). In addition, the FDG PET/CT scan revealed focal hypermetabolic activity within the right femoral neck. (Tr. 242). No determination could be made whether this represented a benign or malignant fracture. (Tr. 242).

The medical records in evidence from Dr. Douglas Newland indicate that Plaintiff saw Dr. Newland on February 25, 2010, with complaints of migraines. (Tr. 252-59). On physical examination and evaluation, Dr. Newland's impression was migraine refractory; TMJ dysfunction, postsurgical; fibromyalgia; hypothyroidism, on replacement; rheumatoid arthritis by history; cervical spondylosis, postsurgical; and possible cervicogenic component to headache. (Tr. 256). While Dr. Newland noted that Plaintiff had tender points consistent with fibromyalgia, Dr. Newland did not find evidence of muscle tenderness or arthritis. (Tr. 256). Dr. Newland also found that Plaintiff had a normal range of motion in the spine, normal motor strength, normal station and gait, and normal neurological and sensory findings. (Tr. 28, 252-57). Dr. Newland recommended exercise and pool walking for her fibromyalgia. (Tr. 28, 256). Dr. Newland also noted that Imitrex

nasal spray "has proved most effective for her" and that Plaintiff's more severe headaches could be treated with a combination of medications. (Tr. 256).

Finally, the medical records in evidence from Dr. Edward Steinmetz indicate that Plaintiff presented to Dr. Steinmetz for evaluation of her migraines on November 18, 2010. (Tr. 300-02). Dr. Steinmetz's impression of Plaintiff included headaches, vascular versus TMJ dysfunction; TMJ dysfunction treated surgically in the past with residual signs and symptoms; hypertension, possibly reactive; fibromyalgia by history; and rheumatoid arthritis by history. (Tr. 302).

### C.  State Agency Evaluations

On November 17, 2009, Plaintiff presented for a physical examination by Dr. Eshan Kibria at the request of the Division of Disability Determinations. (Tr. 243-49). Dr. Kibria's impression was history of rheumatoid arthritis, but no disabling problems in hands or feet; history of hypothyroidism; going through menopause; incomplete workup for nodule on lungs; June 2009 episode of hemoptysis; and history of migraine. (Tr. 246). Dr. Kibria also found that Plaintiff had a full range of motion in her neck and shoulder, no evidence of loss of sensation with no areas of hyperpathia or localized tenderness, normal motor strength in all extremities, normal gross and fine dexterity, and normal station and gait. (Tr. 246).

On April 2, 2010, Plaintiff presented for a mental evaluation by Dr. Aisha Devera at the request of the Division of Disabilities Determinations. (Tr. 26, 260-64). At that time, Plaintiff reported frustration with her physical limitations. (Tr. 260-62). Dr. Devera noted that Plaintiff was alert and well-oriented with no symptoms of psychosis. (Tr. 262). Plaintiff possessed good recall of recent and remote events, suggesting no severe short-term or long-term memory impairment. (Tr. 262). Finally, Plaintiff appeared in no acute mental distress, and her speech and thought processes were logical. (Tr. 263). Dr. Devera diagnosed Plaintiff with Adjustment Disorder with

Depressed Mood with a fair prognosis. (Tr. 263). Dr. Devera noted, however, that should her health continue to decline, her mental health functioning may also continue to decline. (Tr. 263). Dr. Devera recommended a full psychiatric evaluation and individual counseling, after which Plaintiff would benefit from vocational assessment and training. (Tr. 263). Dr. Devera also gave Plaintiff a Global Assessment of Functioning (GAF) score of 65, indicating mild symptoms.[2] (Tr. 26, 263).

On April 12, 2010, Plaintiff presented to Dr. Martha Pollock for a physical examination at the request of the Division of Disabilities Determinations. (Tr. 265-69). Dr. Pollock reported that Plaintiff experienced mild difficulty getting on and off the exam table; was unable to heel-and-toe walk, squat or hop; and that straight leg raising elicited pain in both hips and across her back. (Tr. 267). Dr. Pollock also noted that Plaintiff was unable to perform orthopedic maneuvers due to a combination of pain in the right hip, right knee, and left ankle. (Tr. 269). However, Dr. Pollock noted that Plaintiff did not complain of pain in right knee, right hip, or left ankle. Plaintiff also displayed no evidence of any joint swelling or effusion or any joint deformity. (Tr. 269). Dr. Pollock observed that, while Plaintiff walked with a small-stepped gait and mild limp, she was able to ambulate without the use of an assistive device. (Tr. 267, 269). Dr. Pollock also noted that Plaintiff's motor and sensory functions remained intact, her reflexes were symmetrical, and she experienced no muscle spasms. (Tr. 267, 269). Finally, Dr. Pollock read Plaintiff's October 2009 PET scan as "likely benign." (Tr. 269).

On May 11, 2010, Dr. Nicolas Bancks, a non-examining State Agency physician, offered a review of Plaintiff's medical evidence provided by the two State Agency consulting physicians, Dr. Kibria and Dr. Pollock. (Tr. 270-77). Dr. Bancks opined that Plaintiff could occasionally lift

---

[2] See *American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders*, 32-34 (4th ed. 2000, Text Rev.) (describing the GAF scale used in Axis V of a diagnostic multiaxial evaluation, with a GAF of 61-70 indicating mild symptoms or some difficulties).

and/or carry (including upward pulling) twenty pounds; frequently lift and/or carry (including upward pulling) ten pounds; stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday; and that her ability to push and/or pull (including operation of hand and/or foot controls) was unlimited, other than as indicated for lift and/or carry. (Tr. 271). Dr. Bancks indicated that Plaintiff could occasionally climb ramps/stairs, climb ladders/ropes/scaffolds, balance, stoop, kneel, crouch, and crawl. (Tr. 272). Dr. Bancks also indicated that Plaintiff could have unlimited exposure to wetness; humidity; noise; vibrations; and fumes, odors, dusts, gases, poor ventilation, etc. (Tr. 274). However, Plaintiff should avoid concentrated to extreme heat, extreme cold, and hazards such as machinery and heights. (Tr. 274).

On May 18, 2010, Eric Weiner, Ph.D., completed a Psychiatric Review Technique of Plaintiff at the request of the Social Security Administration. (Tr. 278-91). Dr. Weiner recognized the diagnosis by Dr. Devera of adjustment disorder with depressed mood but found that, while Plaintiff's secondary psychological issues impose limits, they were not severe. (Tr. 278-291). Furthermore, Plaintiff only had mild limitations with regards to restriction of activities of daily living; difficulties in maintaining social functioning; and difficulties in maintaining concentration, persistence, or pace. (Tr. 288).

### III)   Analysis and Conclusions of Law

Plaintiff presents two arguments on appeal: (1) whether the ALJ erred in the consideration of Plaintiff's pain and credibility, and (2) whether the ALJ erred in the evaluation of the state agency opinions.  (Doc. 13, p. 8, 10).  The Court will address each in turn.

### (a) Whether the ALJ erred in the consideration of Plaintiff's pain and credibility

Plaintiff objects to the ALJ's finding that Plaintiff's testimony regarding her pain is not credible to the extent that said testimony is inconsistent with her Residual Functional Capacity as

determined by the ALJ.  Specifically, Plaintiff disputes the accuracy of three assertions by the ALJ regarding Plaintiff's credibility: 1) the statements of record and the records of the consulting psychologist are not consistent with Plaintiff's testimony regarding her pain; 2) Plaintiff's statements regarding her daily activities are inconsistent with Plaintiff's testimony regarding the severity of her pain; and 3) the absence of evidence of Emergency Room visits by Plaintiff is inconsistent with Plaintiff's testimony regarding the severity of her pain. (Doc. 13, pp. 9-10). Defendant responds that although the evidence establishes medical conditions which can reasonably be expected to produce some discomfort and/or pain, it does not support the types of limitations described by Plaintiff in her testimony. (Doc. 15, p. 10).  Defendant argues that Plaintiff failed to carry her burden of showing that her pain limited her beyond the limited demands of the reduced level of light work as outlined in the ALJ's RFC determination. (Doc. 15, p. 10).

When a claimant attempts to establish disability through her own subjective testimony concerning pain or other symptoms, "the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam).  The ALJ is required to assess the claimant's testimony regarding his/her pain and, in the event the ALJ rejects the claimant's testimony, articulate a reasonable basis for so rejecting. *Sewell v. Bowen*, 792 F. 2d 1065, 1068 (11th Cir. 1986). Furthermore, the reasons provided for rejecting the claimant's testimony must be supported by substantial evidence. *Hale v. Bowen*, 831 F. 2d 1007, 1012 (11th Cir. 1987).

In this case, the Court finds that the ALJ did not err in his consideration of Plaintiff's pain and credibility.  In his opinion, the ALJ found that Plaintiff's and her husband's statements of

record reveal that Plaintiff engages in more daily activities than she testified. (Tr. 28).   For example, the ALJ noted, Plaintiff independently cares for her personal needs, provides care to their cat, cooks large batches of food to freeze, reads, watches television, uses a computer for email, drives, and accompanies her husband to the store at times. (Tr. 28).  The ALJ noted that Plaintiff told a consulting psychologist that her average day consists of watching television and performing light housekeeping chores. (Tr. 28).  According to the ALJ, if Plaintiff experienced headach and muscle/joint pain at the frequency and severity alleged, she would not be able to engage in these activities. (Tr. 28).

Additionally, the ALJ noted that Plaintiff's statements of record and testimony reveal that her migraines were responsive to the prescription medication Imitrex, (Tr. 28), with Plaintiff's treating physician Dr. Newland stating that Imitrex had proved most effective for her. (Tr. 28, 256). Dr. Newland also reported a normal range of motion in Plaintiff's spine, normal motor strength, normal station and gait, and normal neurological and sensory findings. (Tr. 28, 252-57). Dr. Newland further recommended that Plaintiff engage in daily exercise, (Tr. 28, 256), but no evidence in the record exists that Plaintiff followed through with this recommendation. Furthermore, the ALJ cited to the findings of consulting physician Dr. Kibria who found that Plaintiff had a full range of motion in her neck and shoulder, no evidence of loss of sensation with no areas of hyperpathia or localized tenderness, normal motor strength in all extremities, normal gross and fine dexterity, and normal station and gait. (Tr. 29, 246).  Further, the ALJ cited Dr. Kibria's opinion that Plaintiff had no disabling arthritic problems in her hands or feet. (Tr. 29). Finally, the ALJ noted that a October 28, 2009 PET scan of Plaintiff revealed no evidence of joint swelling, effusion or deformity in the upper and lower extremities. (Tr. 29).  In this manner, the ALJ's credibility finding is supported by substantial evidence from the record.

Furthermore, although Plaintiff is correct in arguing that her performance of daily activities and the absence of emergency room visits in her record do not of themselves disqualify her from disability, *See Lewis v. Callahan,* 125 F. 3d at 1441, the ALJ's credibility finding did not solely turn on these facts. As Defendant states in its Memorandum in Support of the Commissioner's Decision, in arriving at his decision the ALJ did not base his findings solely on Plaintiff's ability to perform her daily activities at home, or upon the frequency of her emergency room visits. (Doc. 14, p. 10). Rather, the ALJ assessed the totality of the medical evidence as presented to him in evaluating whether Plaintiff's testimony regarding her pain was consistent with the medical records. For this reason, the Court will not disturb the ALJ's consideration of Plaintiff's pain and credibility on review.

**(b) Whether the ALJ erred in the evaluation of the state agency opinions**

In support of her argument that the ALJ erred in evaluating the state agency opinion, Plaintiff merely asserts: "The opinion of a non-examining reviewing consultant is entitled to little weight and, taken alone, does not constitute substantial evidence to support an administrative decision." (Doc. 13, p. 10, citing *Swindle v. Sullivan,* 914 F.2d 222, 226 n. 3 (11th Cir. 1990)). Presumably, Plaintiff is objecting to the ALJ's decision to accord great weight to the opinions of state agency evaluators Dr. Bancks and Dr. Wiener. (Tr. 26, 29). Defendant argues that Plaintiff has presented no argument and cites no facts and, thus, has waived the issue. (Doc. 15, p. 11). Although Plaintiff's argument is sparse at best, as she has made an assertion and cited to a case related to that assertion, the Court will not deem the argument waived.

In this case, the ALJ noted the opinion of state agency medical consultant Dr. Bancks who found that Plaintiff retains the capacity to perform light work with occasional climbing of stairs/ramps; occasional climbing of ladders, ropes, and scaffolds; and occasional balancing,

stooping, kneeling, crouching, and crawling. (Tr. 29). The ALJ noted that Dr. Bancks further limited Plaintiff's RFC so that she must avoid concentrated exposure to extreme cold or extreme heat and work at unprotected heights and around hazardous machinery. (Tr. 29). The ALJ accorded Dr. Bancks' opinion "great weight" explaining that "[t]he objective medical findings and the [Plaintiff]'s and her husband's statement of record describing the [Plaintiff]'s daily activities and lifestyle support the State agency consultant's opinion." (Tr. 29). Dr. Bancks' opinion is consistent with the medical findings of Plaintiff's treating physician Dr. Newland who reported that Plaintiff had normal range of motion in the spine, normal motor strength, normal station and gait, and normal neurological and sensory findings. State agency consultants are considered experts in the Social Security disability programs and their opinions may be entitled to great weight if their opinions are supported by the evidence. 20 C.F.R. §§ 404.1527(f)(2)(I), 416.927(f)(2)(i); SSR 96–6p. Here, Dr. Bancks' opinion is supported by the evidence. For this reason, the Court finds that the ALJ did not err in evaluating Dr. Bancks' opinion.

Additionally, the Court finds that the ALJ's decision to accord "great weight" to the opinion of state agency psychological consultant Dr. Wiener "great weight" was not erroneous. (Tr. 26). As the ALJ noted, Dr. Wiener's opinion that Plaintiff's mental impairments do not cause significant limitation is supported by the lack of discussion of mental impairments by treating sources and the minimal findings indicated by the consulting psychologist, Dr. Devera. (Tr. 26).

### IV. Conclusion

The ALJ's decision in the instant case is supported by substantial evidence. The ALJ did not err in his evaluation of Plaintiff's credibility or to the extent that he relied upon the opinions of state agency consultants, and the ALJ reasonably determined that Plaintiff was not disabled based upon the Social Security Administration's five-step sequential evaluation process.

**IT IS RESPECTFULLY RECOMMENDED THAT:**

1) The final decision of the Commissioner be **AFFIRMED** pursuant to 42 U.S.C. § 405(g); § 205(g) of the Social Security Act.

2) The Clerk be directed to enter judgment for the Commissioner and close the case.

**Respectfully Recommended in Chambers** in Fort Myers, Florida on February 11, 2014.


DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE


Copies: All Parties of Record